**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 98-60024

---

MARSHAUN STEWART,

Plaintiff-Appellee,

VERSUS

ROBERT ARMSTRONG, et al.,

Defendants.

ROBERT ARMSTRONG,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Mississippi
(4:96-CV-209-B-D)

---

February 19, 1999

Before JOLLY, WIENER and PARKER, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Warden Robert Armstrong ("Armstrong") appeals a judgment for Plaintiff Marshaun Stewart ("Stewart") in this 42 U.S.C. § 1983 action. We affirm.

**FACTS AND PROCEEDINGS**

Marshaun Stewart, Mississippi Department of Corrections (MDOC)

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

state prisoner # 46883A, *pro se* and *in forma pauperis*, filed a civil rights complaint against Warden Robert Armstrong, Captain Johnny Moore, Lieutenants Horton and Horns and Dr. John Doe pursuant to 42 U.S.C. § 1983, alleging that he was denied due process prior to punishment following an incident in which another inmate started a fire. The magistrate judge dismissed defendants Moore, Horton, Horns and Doe. Following a *Spears*[2] hearing, the magistrate judge granted Armstrong thirty days to file a responsive pleading. Armstrong answered the complaint and moved the court to dismiss it.

The magistrate judge conducted an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1)(B) at which several inmates, including Stewart, as well as Dr. Dial, a physician with the MDOC, testified. The evidence, viewed in the light most favorable to the judgment challenged by Appellant Armstrong, showed the following. On April 2, 1996, Stewart was transferred from Unit 29-J of the MDOC to protective custody. Stewart was housed in Unit 32-C until April 11, 1996, when he was transferred without a classification hearing to Unit 32-A, a "fire reduction" unit which housed known "fire starters." On May 28, 1996, another inmate housed in Unit 32-A, Tommy Dixon, started a fire. After the fire was extinguished and Stewart and other inmates were examined for smoke inhalation, prison staff ransacked Stewart's cell. The officers destroyed his legal work and took legal work, underwear, shoes, soap, mattresses, sheets, blankets, mail, toothbrush, toothpaste, and paper and turned off the water in his cell. The water was turned back on after seventy-two hours. Approximately ten days later, his mattress, sheet, pillow, underwear and some personal hygiene items were returned, then removed again on Armstrong's order. It was twenty days before authorities returned all personal items.

---

[2]*See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

2

Stewart was issued a paper gown to wear until his property was returned.

Defendant based his defense to this § 1983 action on the contention that, after the May 28, 1996 fire, the unit had been put on suicide watch by MDOC physicians for inmates' own protection, not for punishment. He offered evidence that everything which could be set on fire was removed from all the cells on Unit 32-A to keep the inmates from hurting themselves. The magistrate judge noted that no explanation was given for turning off the water in the cells.

Following the hearing, the magistrate judge recommended that judgment be entered for Stewart in the amount of $50 for each of ten days for a total of $500. Armstrong filed objections to the magistrate judge's report. The district court adopted the magistrate judge's report and recommendations and granted a $500 judgment for Stewart, specifically finding that "Armstrong was responsible for the implementation of the suicide watch, including the turning off of the water, for which no explanation was offered." Armstrong appealed the district court's determination of liability. He does not challenge the amount of damages awarded.

**DEFENDANT'S CHALLENGE TO MAGISTRATE JUDGE'S FINDINGS OF FACT**

Armstrong challenges the district court's fact finding that Stewart's cell was stripped as a form of punishment on Armstrong's order. A magistrate judge's evidentiary hearing "amounts to a bench trial replete with credibility determinations and findings of fact." *See McAfee v. Martin*, 63 F.3d 436, 437 (5th Cir. 1995). We review factual findings under a clearly erroneous standard of review and legal conclusions *de novo. See Newton v. Black*, 133 F.3d 301, 305 (5th Cir. 1998).

Armstrong argues that the only evidence offered to support the district court finding that Stewart's cell was stripped on Armstrong's order was hearsay or mere conclusional allegations.

3

Armstrong asserts that Dr. Dial offered substantiated testimony at the hearing that Dr. Knutson, not Armstrong, ordered the cells stripped to protect the inmates. Dr. Dial also testified that Stewart's cell was stripped and he was issued a paper gown for his protection and for the protection of other inmates, not for punishment.

As Armstrong suggests, much of the testimony supporting a finding that the conditions were imposed as punishment rather than as precautionary measures for the inmates' safety consisted of statements by the inmate witnesses that they believed they were being punished or on hearsay. Armstrong does not dispute the evidence that he personally investigated the fire started by Dixon. In addition to the inmates' statements that they were being punished, inmate Rankin testified, without objection on grounds of hearsay or otherwise, that the inmates were advised that they were being punished. Stewart testified, without objection, that Captain Moore and Lieutenant Monique told him that Armstrong was upset because the inmates had received their property back in ten days and that thereafter the property was removed for another twenty days. The determination to credit the plaintiff's evidence, while disbelieving the defendant's evidence was squarely within the purview of magistrate judge in his role as fact finder.

The magistrate judge's factual finding, adopted by the district court, that the stripping of Stewart's cell, the removal of his personal property, including mattress, bedding and clothing, and the loss of water was punishment, is not clearly erroneous. Nor is the factual finding that Armstrong was responsible for the implementation of that punishment clearly erroneous.

## ATYPICAL, SIGNIFICANT DEPRIVATION

Armstrong challenges the district court determination that the conditions to which Stewart was subjected during the cell-strip violated his procedural due process rights.

4

"States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)(internal citations omitted). In *Sandin*, the Supreme Court determined that a prisoner's confinement to disciplinary segregation for a period of thirty days did not affect the duration of his sentence or "work a major disruption in his environment." *Id*. at 475-76, 484-86. The Court held that disciplinary segregation, "though concededly punitive, [did] not present a dramatic departure from the basic conditions of [the prisoner's] indeterminate sentence." *Id*. at 485.

This court has stated that in the wake of *Sandin* "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status." *Orellana v. Kyle*, 65 F.3d 29, 31-32 & n.2 (5th Cir. 1995). However, *Orellana* challenged the constitutionality of parole review procedures, presenting a question concerning a prisoner's liberty interest in obtaining parole under Texas law. *Id.* To the extent that the language in *Orellana* can be read to address the issue of a prisoner's liberty interest in being free from certain conditions of confinement imposed by the prison for purposes of punishment, it is dicta.

In this case, the district court found that the stripping of Stewart's cell, the removal of his personal property, including mattress, bedding and clothing, and the loss of water, constituted punishment. The district court further found that this "was a

5

significant deprivation of the basic minimal civilized measure of life's necessities atypical of those conditions generally imposed upon inmates." The district court therefore held Armstrong liable under § 1983.

We agree. Cutting off water to Stewart's cell and depriving him of all clothing and bedding except for a paper gown is both significant and atypical of the hardships incident to prison life in the MDOC. If a deprivation is significant and atypical of prison conditions at MDOC, a prisoner is entitled to a certain minimum level of due process prior to its imposition. *See Sandin*, 515 U.S. at 483-84; *see also Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). There is no evidence that Stewart was afforded any measure of due process prior to the stripping of his cell. Therefore, we conclude that, pursuant to the Supreme Court's reasoning in *Sandin*, 515 U.S. at 483-84, the district court's finding of liability in this case must be affirmed.

## CONCLUSION

Based on the foregoing, we affirm the district court's judgment.

AFFIRMED.